**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

THEODORE TARVER JR,

        Plaintiff,

  v.

CITY OF SAN FRANCISCO, *et al.*,

        Defendants.

_____/

No. C 08-03500 SI

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
and DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT**

On September 11, 2009, the Court heard oral argument on the parties' cross-motions for summary judgment. Having considered the arguments of the parties and the papers submitted, and for good cause shown, defendant's motion for summary judgment is GRANTED and plaintiff's motion is DENIED.

**BACKGROUND**

Plaintiff Theodore Tarver, Jr. alleges that the City and County of San Francisco and the San Francisco Police Department ("SFPD") (collectively, "defendant" or "City") discriminated against him for having a physical disability and retaliated against him based on (1) a previous lawsuit and judgment he won against defendant, and (2) several complaints he made about SFPD's treatment of him during the rehiring process. This lawsuit centers on a series of events described in roughly chronological order. Disputes between the parties as to underlying facts are noted.

**1.    Plaintiff's Employment History with the SFPD**

Plaintiff worked as a San Francisco Police Officer from July 30, 1984 until his resignation in

United States District Court
For the Northern District of California

June 2001.  Tarver Decl. ¶¶ 2, 12 [Docket No. 48].  He received over fifty commendations for his performance as a police officer.  *Id.* ¶ 4.  During his employment with SFPD, he injured his back several times in the line of duty.  In 1992, plaintiff went on light duty status in order to allow his back to heal; in 1998, he underwent surgery and extensive rehabilitation.  His doctor told him his back would take approximately three years to heal.  *Id.* ¶¶ 6-8, 11-12.  SFPD advised plaintiff he was not eligible for disability retirement.  However, plaintiff believed that if he temporarily resigned with satisfactory service, the Civil Service Commission Rules allowed him up to two years to return to work with full reinstatement.  *Id.* ¶ 13; see Civil Service Commission Rules (2000), 214 Article IV, Reappointment, Rules 214.16.2-3.  According to plaintiff, he resigned in June 2001 because he wanted to work on getting healthy and because SFPD denied his requests for work that involved less bending and for a chair offering more back support.  Tarver Decl. ¶ 12.

**2.      Plaintiff's Application for Reinstatement with the SFPD and Initiation of Prior Suit**

In February 2002, eight months after plaintiff's resignation, his doctor determined he was fit to return to full duty at work.  *Id.* ¶ 14.  Plaintiff sought reinstatement to a Patrol Officer position.  He underwent a medical examination with Dr. Sokolowsky, SFPD's physician.  *Id.* ¶ 13-15, 18.  Dr. Sokolowsky found that plaintiff's back injuries precluded him from performing essential functions of his job, including standing without rest for ten hours.  *Id.* ¶ 16-19.  On September 24, 2002, SFPD sent plaintiff a letter stating that the doctor concluded he was medically disqualified from serving as an SFPD police officer.  SFPD Letter Re: Reinstatement Application, ex. A [Docket No. 37].

In July 2002, plaintiff sued the City in state court for six causes of action based on SFPD's rejection of his reinstatement application. Complaint in *Tarver v. San Francisco*, SF Sup. Ct. No. 410-499, ex. B [Docket No. 32-1].  Plaintiff alleged violations of the Fair Employment and Housing Act ("FEHA") for physical disability discrimination, failure to accommodate, failure to prevent discrimination, retaliation, violations of the California Family Care and Medical Leave Act, and refusal to conduct a good faith interactive process.  *Id.* at 3-8.  The City filed a motion for summary judgment and the court ruled in its favor.  App. Opinion in *Tarver v. San Francisco*, No. A104171 (Cal. App. Dec. 6, 2004), ex. C, at 1884 [Docket No. 32-1].  Plaintiff appealed.  The First District Appellate Court

2

United States District Court
For the Northern District of California

affirmed the lower court on three of plaintiff's causes of action, and reversed with regard to the claims of physical disability discrimination, failure to accommodate, and failure to prevent discrimination. *Id.* at 1890-1905.

In February 2006, the remaining claims were tried before a jury. *See Tarver v. San Francisco*, et al., SF Sup. Ct. No. 410499, ex. A, p. 1 [Docket No. 32-1]. On March 1, 2006, the jury returned a verdict for the City on the disability discrimination claim, concluding that plaintiff could not perform essential functions of his position with or without reasonable accommodations. *Id.* at 2. The jury returned a verdict in favor of plaintiff on the claims of failure to accommodate and failure to prevent discrimination, finding that defendant failed to provide a reasonable accommodation for plaintiff's back condition and failed to take all reasonable steps necessary to prevent physical disability discrimination.[1] *Id.* at 3-4. The jury awarded plaintiff economic damages in the amount of $428,450. Judgment was entered on that verdict on April 26, 2006. *Id.* at 1.

### 3.       SFPD's Lateral Hiring Process and Plaintiff's Application for Lateral Position

After resolving the prior lawsuit, plaintiff reapplied to SFPD as a "lateral hire." Tarver Decl. ¶ 24. SFPD's Lateral Hiring Program allows qualified officers to transfer in at a higher level of service, with a higher salary, a shorter training period, and greater promotional opportunities. SFPD Career Website ("SFPD Website"), ex. Q [Docket No. 48-1]; Gaffud Depo., ex. D, p. 14:19-24 [Docket No. 29-2]. Lateral applicants are also exempt from the written entry examination. Gaffud Depo. at 18:2-3. The parties dispute the requirements necessary to apply for a lateral police officer position with the SFPD. According to defendant, lateral applicants must have (1) two years of prior active patrol experience, (2) a valid Peace Officers Standards and Training (POST) certificate, and (3) current employment as a police officer or peace officer. *Id.* at 16:4-20, 29:5-7. Plaintiff agrees that the first two qualifications are required but asserts, based on his personal observations, that SFPD does not typically require lateral applicants to have current employment as police or peace officers. Tarver Decl. ¶ 32.

---

[1] The Court notes that the jury's findings with respect to disability discrimination and failure to accommodate appear on their face to be inconsistent. The parties brought numerous post-trial motions challenging the inconsistent verdict, but eventually settled, so the inconsistency was never resolved.

1   The parties do not dispute that plaintiff satisfied the first two requirements.

2       On May 24, 2007, plaintiff sent an email to Officer Edwin Gaffud, SFPD's lateral recruiter,

3   requesting an application packet for a lateral peace officer position. *Id.* ¶ 28. Gaffud never received

4   plaintiff's email, but acknowledged that plaintiff sent the email to the correct email address. Gaffud

5   Depo. at 27:8-15. Plaintiff called to follow up on the email approximately every two weeks from June

6   to August 2007 and left at least four telephone messages, but received no response. Tarver Decl. ¶ 29-

7   30.

8       In September 2007, plaintiff went to the Background Investigation Unit of the Hall of Justice

9   and spoke to Gaffud about lateral applications. Gaffud Depo. at 25:5-21; Tarver Decl. ¶ 31. Plaintiff

10   told Gaffud he had called and emailed SFPD numerous times to request an application, but had not

11   received a response. *Id.* at 26:19-24. He told Gaffud he believed SFPD's failure to respond was in

12   retaliation for his previous lawsuit. Tarver Decl. ¶ 31. Gaffud told plaintiff he had not received his

13   messages or emails. Gaffud Depo. at 28:9-10. Gaffud stated in his deposition that he asked plaintiff

14   for his name and that plaintiff responded by stating his name and saying he used to work for the SFPD.

15   According to Gaffud, plaintiff stated that it was Police Chief Heather Fong's fault that he lost his job.

16   *Id.* at 28:2-6. Plaintiff disputes this testimony.[2] Tarver Decl. ¶ 32.

17       Gaffud then told plaintiff he needed to be actively employed as a peace officer with two years

18   of patrol experience in order to apply as a lateral. Gaffud Depo. at 29:5-7. When Gaffud asked plaintiff

19   if he was actively employed as a peace officer, plaintiff replied that until recently, he had been employed

20   a Park Ranger. *Id.* at 29:8-12. Gaffud told him he did not "qualify as a lateral" since he had left his

21   position as a Park Ranger. Tarver Decl. ¶ 32. Gaffud told plaintiff he would not be received back as

22   a lateral and would have to start as an entry-level officer. *Id.* According to plaintiff, he concluded at

23   that point that Gaffud was lying about the requirements in order to discourage his application. *Id.*

24       Gaffud testified that he did not know about plaintiff's prior lawsuit against the City when he

25   spoke to plaintiff. He stated he first learned plaintiff had sued the city and received damages

26   approximately two weeks after plaintiff came into his office. Gaffud Depo. at 37:1-23. He also testified

27

28   [2] Plaintiff's declaration only states that this was not his response. It does not specify what his
response actually was or whether Gaffud even asked him for his name.

United States District Court
For the Northern District of California

that plaintiff's name came up during two subsequent conversations in the office about a week or two later. *Id.* at 42:2-44:22. In these conversations, people mentioned the fact that plaintiff had sued the police department, received money, and left the department. *Id.* at 42:2-7, 44:14-21. Plaintiff claims Gaffud knew about his prior lawsuit before plaintiff spoke with Gaffud, but provides no evidence in support of this allegation.

On November 5, 2007, plaintiff wrote a letter to the SFPD Lateral Transfer Unit asserting that the "continued lack of communication in unanswered e-mails and phone calls [was] . . . due in large part to my having successfully secured a jury verdict of $428,000 against the SFPD." Tarver Letter to SFPD, ex. C [Docket No. 48]. He requested that SFPD contact him immediately regarding his lateral transfer application. *Id.* On January 2, 2008, plaintiff sent a letter by registered mail to Police Chief Fong, stating that he had tried to contact the SFPD several times regarding his interest in a lateral hire position, but had received no response. Tarver Letter to Fong, ex. D [Docket No. 48]. Plaintiff stated,""[S]ome members of the department have created a wall to block my return." *Id.* Plaintiff stated he would like to "return to work as a police officer . . . without fear of retaliatory actions by the San Francisco Police Department." *Id.* He requested that Chief Fong inform him of how he could get his application heard and what was needed to allow him to return to SFPD. *Id.*

On January 23, 2008, Sergeant Trenia Wearing in the Recruitment Unit sent plaintiff a letter responding to his letter to Police Chief Fong. Wearing Letter dated 1/23/2008, ex. E [Docket No. 48]. Wearing's letter directed plaintiff to SFPD recruitment websites that described the lateral application process. *Id.* The letter did not address plaintiff's concerns regarding retaliation and discrimination. Tarver Decl. ¶ 36.

On January 29, 2008, plaintiff filed a charge with the EEOC, alleging that SFPD had discriminated against him on the basis of his disability and retaliated against him for engaging in protected activity. *Id.* ¶ 38. At the time, he had not yet submitted an application to return to SFPD. Tarver Depo. at 83:16-19. Plaintiff asserts that he had attempted to submit an application, but could not get anybody to communicate with him. *Id.* at 83:4-12. He received his right to sue letter from the EEOC on February 5, 2008. Rt. to Sue Letter, ex. F [Docket No. 48].

5

**4.      SFPD's Entry-Level Hiring Process and Plaintiff's Application for an Entry-Level Position**

Shortly after plaintiff received his right to sue letter, he applied for an entry-level position with SFPD.  To apply for an entry-level police officer position, applicants without a valid POST certificate must take the entry-level battery test.  Lo Depo., ex. C, p. 10:17-11:6 [Docket No. 42].  Applicants must also complete a Personnel History Questionnaire ("PHQ"), a departmental interview, a physical ability test, a background investigation, a medical examination, a visual acuity examination, a psychological screening, and a polygraph test.  *See* ex. K to Tarver Depo. excerpts attached as ex. B [Docket No. 42]; Letter from SF Dept. of Hum. Res. dated 2/28/2008 ("HR Letter 1"), ex. L to Tarver Depo. excerpts attached as ex. B [Docket No. 42].

**A.      Written Exam and PHQ**

On February 6, 2008, plaintiff received a letter from Sergeant Wearing informing him that the next written examination was scheduled for February 19, 2008.  Wearing Letter dated 2/6/2008, ex. G [Docket No. 48].  The letter further stated that plaintiff could bring his current POST certificate with him to the examination site to waive the written component.  *Id.*  Plaintiff attended the test site and presented his POST certificate, and was granted a waiver from the written exam requirement; he filled out the PHQ while he was there.  HR Letter 1; Tarver Decl. ¶ 40.  On February 28, 2008, the San Francisco Department of Human Resources notified him that he had been placed on the "Police Officer Tentative Eligible List."  *Id.*  On March 13, 2008, plaintiff received another letter from Human Resources, stating that due to plaintiff's responses on the PHQ, it was unlikely he would pass the background investigation.  Letter from SF Dept. of Hum. Res. dated 3/13/2008 ("HR Letter 2"), ex. H [Docket No. 48].  Human Resources informed plaintiff it was in his best interest to withdraw his application, but stated that he was not completely eliminated from further consideration.  HR Letter 2.  Plaintiff could choose to continue with his application and attend his departmental interview and physical ability exam.  *Id.*  If he passed the interview and exam, his name would be forwarded to the Background Unit and he would have the opportunity to provide further written explanation of his PHQ responses.  *Id.*

Plaintiff ultimately failed the PHQ by incurring more than 13 "problem points."  Roberts Decl.,

¶ 16 [Docket No. 43];  Tarver Problem File, ex. B to Roberts Decl.  "Problem points" have implications for the potential success of an applicant for a law enforcement position.  Roberts Decl. ¶ 16.  POST mandates that applicants must be investigated in the category of "Stress Tolerance."  *Id.*  According to POST, evidence that an applicant is lacking in stress tolerance can include multiple personal bankruptcies, mounting debts, evasion of creditors, past due accounts, failure to meet financial obligations, and failure to exercise fiscal responsibility commensurate with income.  *Id.*  Plaintiff admitted on his PHQ that he had taken money from a company where he worked, declared both Chapter 7 and Chapter 13 bankruptcies, and had checks returned for insufficient funds more than twenty times.[3] *Id.*  Plaintiff accumulated nine problem points for these financial issues.  *Id.*  POST also requires agencies to assess an applicant's "Impulse/Anger Control"; evidence an applicant is lacking in impulse/anger control includes any act of domestic violence as an adult, verbal or physical abuse or violence toward others, or commission of a violent assault.  Roberts Decl. ¶ 16.  Plaintiff admitted to having slapped or punched a spouse, and incurred three problem points for this conduct.  *Id.*  Plaintiff also incurred problem points for having resigned to avoid being fired and for being rejected as a job applicant due to issues raised by a background investigation.  *Id.*

### B.      Physical Ability Test and Departmental Interview

Plaintiff elected to continue the application process.  On March 27 and 29, 2008, respectively, plaintiff took and passed the physical ability and oral board tests.  Tarver Decl. ¶ 42.  On March 31, 2008, Human Resources wrote him a letter stating that the interview panel recommended that he continue with the selection process.  Letter from SF Dept. of Hum. Res. dated 3/31/2008 ("HR Letter 3"), ex. I [Docket No. 48].  The letter also stated that plaintiff would remain "under waiver" on the

---

[3] Plaintiff's counsel asserted at oral argument that each of these seemingly negative responses on the PHQ could be explained (for example, counsel stated that plaintiff mistakenly interpreted the term "bounced check" as including overdrafts, and stated that plaintiff's bankruptcy was due to the cost of litigating his prior suit against the City), and faulted defendant for failing to provide plaintiff an opportunity to explain his responses.  However, Sgt. Juarez testified that in a June 12, 2008 telephone call she advised plaintiff, among other things, to call her back to discuss the issues on his failed PHQ (Juarez Depo., at 80, 82, 93) and it is undisputed that plaintiff never did call her back (Tarver Depo. at 182).  Indeed, the instant lawsuit had already been filed in state court several days before the June 12, 2008 phone call.

Eligible List until he successfully completed the background investigation, medical exam, visual acuity exam, psychological screening, and polygraph.

### C.      Personal History Statement

On April 17, 2008, plaintiff received a Personal History Statement ("PHS") packet from SFPD and was told to complete and submit it by April 18, 2008.  *Id.* ¶ 44; PHS packet, ex. J [Docket No. 48]. As part of the PHS, plaintiff was required to list his height and weight.  Tarver Decl. ¶ 45.  Since he did not have a scale or measuring tape, he wrote down the measurements on his driver's license without confirming whether they were still accurate.  *Id.*  Plaintiff did not list the dates of his prior employment with SFPD in the section for employment history.  *Id.* ¶ 48.  Plaintiff also did not initial or sign the PHS. PHS at DEF 0074.  Shortly after plaintiff returned the PHS, an SFPD employee cancelled his scheduled background investigation interview and told plaintiff he would be contacted by an officer in the Background Investigation Unit.  Tarver Letter dated 5/23/2008, ex. L [Docket No. 48-1].

On May 23, 2008, plaintiff sent a letter to SFPD inquiring about the status of his employment application and the reason for the delay in conducting his background exam.  *Id.*  He also stated that he was concerned SFPD's actions were discriminatory and retaliatory.  *Id.*  Plaintiff sent an email to the Background Section on June 9, 2008, again inquiring about the status of his application.  Tarver Email dated 6/5/2008, ex. M [Docket No. 48-1].  Background investigator Yulanda Williams responded to plaintiff's email and informed him that she would pass his inquiry on to Sergeants Dennis Callaghan and Martha Juarez.  Williams Email dated 6/5/2008, ex. M [Docket No. 48-1].  At this time, plaintiff filed federal and state law discrimination claims in California state court.

On June 12, 2008, Sergeant Martha Juarez from the Background Investigation Unit called plaintiff and told him he could not move forward with his application because he was over the weight limit and because his PHS was incomplete.  Tarver Decl. ¶ 47; Tarver Depo. at 98:12-16.  Plaintiff reported on his PHS that he was 5'8" tall and weighed 200 lbs.  PHS at DEF 0052.  The weight limitation for a 5'8" male applying to SFPD is 183 lbs.  Select Process under "Step 8."  Plaintiff asked Juarez about alternative options to the height/weight requirement, such as a body fat percentage analysis, but Juarez did not offer any information regarding alternatives.  *Id.* at 50.  Juarez advised

8

1   plaintiff to lose weight and complete a new PHS, at which time they could discuss plaintiff's responses

2   to the questions on his PHQ.  Juarez Depo. at 80:14-21.

3         Juarez also told plaintiff that his work history was incomplete because he did not include his

4   prior SFPD employment on his PHS.  Tarver Decl. ¶ 48.  Plaintiff replied that the missing information

5   could be found in his SFPD personnel history file.  *Id.*  After this conversation, plaintiff did not file a

6   new PHS or call Juarez again.  Plaintiff was never asked to explain the PHQ responses that prompted

7   his problem points, and never did so.  Tarver Decl. ¶ 54.

8         The parties dispute whether plaintiff is still on an active potential hire list.  Juarez testified that

9   plaintiff's file is in a file cabinet and has not gone to long-term storage because "it's still an open list."

10  Juarez Depo. at 137:4-22.  Plaintiff asserts that Juarez medically disqualified him based on his failure

11  to meet the weight requirement.  Tarver Decl. ¶ 50.  However, plaintiff has never received a written

12  rejection letter from SFPD.  Tarver Depo. at 138:21-24.

13

14                              **LEGAL STANDARD**

15        Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and

16  admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

17  material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

18  56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of

19  material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party, however, has

20  no burden to negate or disprove matters on which the non-moving party will have the burden of proof

21  at trial.  The moving party need only demonstrate to the Court that there is an absence of evidence to

22  support the non-moving party's case.  *See id.* at 325.

23        The burden then shifts to the non-moving party to "designate 'specific facts showing that there

24  is a genuine issue for trial.'"  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  To carry this burden, the

25  non-moving party must "do more than simply show that there is some metaphysical doubt as to the

26  material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

27  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which

28  the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

United States District Court
For the Northern District of California

242, 252 (1986).

In deciding a summary judgment motion, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.* The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

**DISCUSSION**

**1.     Retaliation Claim**

In his first, second and third causes of action, brought under Title VII and the FEHA, plaintiff claims the City failed to rehire him as a police officer because of his prior lawsuit and judgment against the City, and that this amounted to illegal retaliation. Both parties now move for summary judgment on this claim. The City asserts that plaintiff cannot meet his burden of showing a prima facie case of retaliation, and that, even if he could, he cannot demonstrate that the City's proffered reasons for its actions were a mere pretext. Plaintiff contends he has established as a matter of law that the City unlawfully retaliated against him by engaging in "discriminatory rejection" of his employment application.

In retaliation cases, the Court applies the three-step analysis set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The first step requires the plaintiff to make out a prima facie case of retaliation by showing: "(1) involvement in protected activity opposing an unlawful employment practice, (2) an adverse employment action, and (3) a causal link between the protected activity and the adverse action." *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006). The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment decision. *McDonnell Douglas*, 411 U.S. at 802. Finally, the burden shifts back to the plaintiff to show that the employer's proffered explanation is merely a pretext for a discriminatory motive. *Id.* at 804.

1    Defendant does not dispute that plaintiff's prior lawsuit and the discrimination complaints filed

2    in this case were protected activities, satisfying the first prong of the prima facie showing of retaliation.

3    The primary dispute between the parties centers on whether plaintiff can meet the latter two prongs of

4    the prima facie showing, and if so, whether defendant had a valid, non-pretextual reason for failing to

5    hire plaintiff.  The Court concludes as a matter of law that plaintiff cannot make out a prima facie case

6    of retaliation.  Even assuming that defendant's actions with respect to plaintiff's lateral hire application

7    and entry-level application constituted adverse employment actions, plaintiff cannot satisfy his burden

8    of showing a causal link between his protected activities and those adverse actions.

9    Plaintiff asserts that Gaffud retaliated against plaintiff for plaintiff's prior lawsuit, by failing to

10   respond to plaintiff's 2007 request for information regarding the lateral hire process, and then by

11   providing plaintiff with misinformation to dissuade him from submitting an application.  However, it

12   is uncontested that Gaffud, the sole officer in charge of lateral recruiting, did not know about plaintiff's

13   prior lawsuit until after his interactions with plaintiff had taken place.  Gaffud first learned of plaintiff's

14   prior suit for damages approximately two weeks after plaintiff came into Gaffud's office to inquire about

15   lateral hire applications.  Plaintiff's conclusory, unsupported assertions to the contrary[4] are not sufficient

16   to create a genuine issue of fact for trial.  *See Thornhill*, 594 F.2d at 738 (conclusory testimony in an

17   affidavit is insufficient to defeat summary judgment).

18   With respect to plaintiff's 2008 application for an entry-level officer position, submitted several

19   months after his discrimination complaint regarding SFPD's handling of his lateral hire inquiries, the

20   City has established as a matter of law that SFPD did not cause plaintiff's application to be rejected.

21   The City was not the cause of plaintiff's inability to meet the weight requirement, his incomplete PHS,

22   or the problem points accrued on plaintiff's PHQ.  Moreover, although plaintiff challenges the propriety

23   of the PHQ's questions and the method of calculating PHQ scores, he does not dispute that the test was

24   _____

25       [4] When asked at oral argument to identify any facts suggesting that Gaffud knew of the lawsuit
     prior to the September 2007 meeting, counsel pointed to deposition testimony by Capt. Schmitt,
26   concerning a conversation Capt. Schmitt had with Sgt. Callaghan, concerning plaintiff's lateral
     application. *See* Schmitt Depo., ex. F, p. 59-60 [Docket No. 29-2].  That conversation, however, clearly
27   took place after plaintiff had gone to see Gaffud in September.  Capt. Schmitt recalled that Callaghan
     was "letting me know that that [plaintiff's visit to Gaffud] had happened and asked for direction.  And
28   I said, 'Well, it has to be handled like any other lateral application.'"  *Id.*  This does not support an
     inference that Gaffud knew about plaintiff's lawsuit before the September 2007 meeting.

**United States District Court**
For the Northern District of California

formulated by and is scored by an outside agency, not SFPD, and that defendant therefore could not have manipulated plaintiff's score in retaliation for his prior lawsuit or his more recent discrimination complaint. Plaintiff faults SFPD for failing to give him an opportunity to explain his negative responses to the questions on his PHQ. Plaintiff ignores the fact that during his last conversation with Sergeant Juarez, he was told to resubmit a completed PHS, at which point Juarez would discuss plaintiff's PHQ responses with him. Moreover, plaintiff's application has never actually been rejected.

In sum, plaintiff presents no evidence that would permit a jury to determine that the application requirements were applied to him in a retaliatory manner. The City's motion for summary judgment is therefore GRANTED with respect to the retaliation claim.

**2.      Physical Disability Discrimination Claim**

In plaintiff's fourth, fifth, and sixth causes of action, he claims the City engaged in physical disability discrimination against him, in violation of the ADA, 42 U.S.C. § 12101 *et seq.*, and FEHA, Cal. Gov. Code § 12940(a). Plaintiff asserts that although he did not consider himself to be disabled when he sought employment with SFPD in 2007 and 2008, the City discriminated against him because it regarded him as disabled. *See Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 521-22 (1999) ("[A] person is 'regarded as' disabled within the meaning of the ADA if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities.").

Both ADA and FEHA discrimination claims are assessed using the three-step *McDonnell Douglas* framework discussed previously. *See McDonnell Douglas*, 411 U.S. at 802. A prima facie showing of disability discrimination requires the plaintiff to demonstrate: (1) that the plaintiff suffers from a disability; (2) that the plaintiff is otherwise qualified to do his job; and (3) that the plaintiff suffered an adverse employment action because of his disability. *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1090 (9th Cir. 2002); *Faust v. Cal. Portland Cement Co.*, 58 Cal. Rptr. 3d 729, 745 (Cal. Ct. App. 2007). To meet the first prong of the prima facie showing, a plaintiff bringing a "regarded as" disabled claim must "provide evidence of the employer's 'misperception,' or subjective belief that the plaintiff is substantially impaired . . . . and provide evidence that the employer subjectively believes that the plaintiff is substantially limited in a major life activity." *Walton v. U.S. Marshals Serv.*, 492 F.3d

1    998, 1006 (9th Cir. 2007).

2

3           **A.      Preclusive Effect of Prior State Court Judgment**

4           Defendant asserts, as a preliminary matter, that plaintiff is collaterally estopped from relitigating

5    the second prong of his prima facie showing—whether he is otherwise qualified to do his job—because

6    the jury in plaintiff's prior lawsuit found that he could not perform the essential functions of the police

7    officer position with or without a reasonable accommodation.

8           As defined under California law, collateral estoppel "precludes relitigation of issues argued and

9    decided in prior proceedings." *Lucido v. Superior Court*, 51 Cal. 3d 335, 341 (1990).  The doctrine

10   applies if: (1) an issue raised in a present action is identical to an issue litigated and decided in a prior

11   proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against

12   whom issue preclusion is asserted was a party or in privity with a party to the prior proceeding."

13   *Brinton v. Bankers Pension Servs., Inc.*, 76 Cal. App. 4th 550, 556 (1999).[5]  Under California law,

14   however, a prior judgment lacks preclusive effect "if there are changed conditions and new facts which

15   were not in existence at the time the action was filed upon which the prior judgment is based."

16   *McGaffey v. Sudowitz*, 189 Cal. App. 2d 215, 218 (1961).

17          Defendant's contention that the prior state court judgment in the City's favor carries preclusive

18   effect in this proceeding must fail due to several changes in essential facts.  First, the fact that plaintiff

19   was deemed unable to perform the essential functions of the police officer position during the period

20   at issue in his prior action has limited bearing on his ability to perform those functions during the period

21   at issue in this case, given the additional years of healing and rehabilitation time.  Second, the entry-

22   level position for which plaintiff applied in 2008 may well involve different job functions than

23   plaintiff's previous position.  Accordingly, the Court will proceed to consider the merits of the parties'

24   arguments concerning plaintiff's disability discrimination claim.

25

26   _____

27          [5] In determining the preclusive effect of a state court judgment in federal court, the federal court
     must apply the preclusion rules of the state in which the prior judgment was rendered. *Marrese v. Am.*
28   *Acad. of Orthopedic Surgeons*, 470 U.S. 373, 379 (1985).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

### B.       Plaintiff's Prima Facie Case of Discrimination

Plaintiff must show, first, that SFPD had a subjective belief that he was disabled and that his impairment resulted in a substantial limitation on his ability to perform a major life activity.  *See Walton*, 492 F.3d at 1006.  Under EEOC regulations, working constitutes a major life activity.  *See* 29 C.F.R. § 1630.2(I).  A plaintiff must show that his employer regarded him as unable to perform "either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  *Walton*, 492 F.3d at 1009.  In other words, "An allegation that the employer regards the impairment as precluding the employee from a single, particular position is insufficient to support a claim that the employer regards the employee as having a substantially limiting impairment."  *Id.*

Here, plaintiff has submitted no evidence — direct or circumstantial — to show that SFPD regarded him as unable to perform a class or range of jobs at the time plaintiff inquired about the lateral hire position and submitted an application for the entry-level position.  Indeed, the only evidence of plaintiff's physical condition during the time period at issue in this case reflects that plaintiff passed the physical ability test administered by SFPD as part of the application process.  This fact appears to undermine plaintiff's contention that defendant regarded him as disabled.

Because plaintiff has submitted no evidence in support of his contention that defendant regarded him as disabled, and disclaims that he was actually disabled when he applied for employment, there is no genuine dispute of fact for trial on plaintiff's claim of disability discrimination.  Defendant's motion for summary judgment on this claim is GRANTED.

### C.       Failure to Prevent Discrimination

Because plaintiff has not shown that the City engaged in disability discrimination, there is no basis for the claim, stated in his seventh cause of action, that the City failed to take all reasonable steps necessary to prevent discrimination.  Defendant is entitled to summary judgment on this claim as well.  *See Trujillo v. N. Cty. Transit Dist.*, 63 Cal. App. 4th 280, 288-89 (1998) ("Employers should not be held liable to employees for failure to take necessary steps to prevent [discriminatory] conduct, except where the actions took place and were not prevented.").

**3.     Failure to Engage in an Interactive Process**

Plaintiff's eighth cause of action concerns the City's alleged failure to engage in a good-faith interactive process.  Contrary to the claim in his summary judgment motion that he was not actually disabled, but merely regarded as such, plaintiff alleges as part of his interactive process claim that he was in fact disabled at the time of the applications in question, and that the City failed to engage in a good-faith process of arriving at a reasonable accommodation for his disability.

**A.     Exhaustion**

Defendant's first argument in its motion for summary judgment on this claim is that plaintiff failed to exhaust his administrative remedies because he did not expressly raise the claim in his charge to the Department of Fair Employment and Housing ("DFEH").  A plaintiff alleging employment discrimination must exhaust administrative remedies before filing a Title VII claim by filing a timely charge with the EEOC or the corresponding state agency—in this case, the DFEH. *Freeman v. Oakland Unified School Dist.*, 291 F.3d 632, 636 (9th Cir. 2002).  Charges of discrimination in an administrative filing should be read with the "utmost liberality," *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1100 (9th Cir. 2002), and a claim is properly exhausted even if not expressly stated in the administrative filing as long as it "can reasonably be expected to grow out of the charge of discrimination," *Freeman*, 291 F.3d at 636.  Here, although plaintiff's DFEH filing expressly referred only to disability discrimination and retaliation, the Court finds that the claim for failure to engage in an interactive process could reasonably be expected to grow out of the charges stated.  The Court rejects defendant's contention that the claim is unexhausted.

**B.     Merits**

The FEHA requires employers to "engage in a timely, good faith, interactive process" with an employee or applicant for employment in order to determine potential reasonable accommodations for known physical or mental disabilities of the employee or applicant, provided the employee or applicant has made a request for a reasonable accommodation for his or her disability.  Cal. Gov. Code § 12940(n); *see also Avila v. Cont. Airlines, Inc.*, 165 Cal. App. 4th 1237, 1252 (2008) (plaintiff must

15

request a reasonable accommodation from the employer).

Plaintiff fails to show that he ever made a request for a reasonable accommodation from the City during the period at issue here.  Plaintiff's only argument is that his 2008 job application itself — or, as he terms it, request for "reemployment" — amounted to a request for a reasonable accommodation. The Court disagrees.  Under the FEHA, a reasonable accommodation is something that will enable an employee or prospective employee to perform the functions of his or her job.  *See* Cal. Gov. Code § 12926(n)(1)-(2) (reasonable accommodations may include "[j]ob restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.").  Under the statutory definition, a job application itself is not a request for a reasonable accommodation. Defendant's motion for summary judgment as to the claim for failure to engage in an interactive process is GRANTED.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion for summary judgment and DENIES plaintiff's motion for summary judgment.  [Docket Nos. 28, 35].

**IT IS SO ORDERED.**

Dated: September 15, 2009

SUSAN ILLSTON
United States District Judge